1
2
3
4
5

BECKER & POLIAKOFF, P.A.
Emerald Lake Corporate Park
3111 Stirling Road
Fort Lauderdale, FL  33312-6525
Telephone:  (954) 987-7550
Facsimile:  (954) 985-4176
DDeSouza@becker-poliakoff.com

6
7

Attorneys for Defendant
Jason Edward Hammonds

8

UNITED STATES DISTRICT COURT

9

DISTRICT OF ARIZONA

10

Smith Enterprise, Inc.,

No. 2:13-cv-01773-GMS

11
12

                    Plaintiff,

vs.

**DEFENDANT'S MOTION FOR
SANCTIONS PURSUANT TO FED. R.
CIV. P. 11**

13
14
15

Jason Edward Hammonds,

                    Defendant.

16

17
18
19
20
21

         Pursuant  to  Federal  Rule  of  Civil  Procedure  11(c),  Defendant  Jason  Edward
Hammonds ("<u>Hammonds</u>") respectfully files this Motion to assess sanctions against
Plaintiff Smith Enterprise, Inc. ("<u>SEI</u>") and its counsel, and in support thereof, states as
follows:[1]

22

<u>**INTRODUCTION**</u>

23
24
25

         Stripped of its self-promotion and boasting, the Complaint can best be described as
a calculated effort by a corporation to intimidate and silence an individual who had the

26
27
28

---
[1]         Pursuant to Federal Rule of Civil Procedure 11(c)(2), Mr. Hammonds served this
Motion on SEI and its counsel on September 17, 2013 and requested that they withdraw
the Complaint.  The 21-day safe harbor period provided by Rule 11 has expired, and SEI
and its counsel have elected to not withdraw the Complaint.

audacity to speak 'negatively' of SEI while engaged in open discourse on the Internet. To ensure Mr. Hammonds' costs to defend this action would be maximized, SEI chose to bring suit in this Court, located approximately 2,000 miles from the home/office where Mr. Hammonds wrote and published the allegedly disparaging remarks. This strategy[2] is often effective as many defendants will simply succumb to the greater resources of the corporate plaintiff.

When challenged, however, a plaintiff cannot rely on threats and resources alone – a plaintiff must show both that jurisdiction is proper in the chosen forum and that its claims are actually meritorious. In this action, SEI can do neither. Although Mr. Hammonds' forthcoming motion to dismiss will focus on the merits of SEI's claims, this motion is brought to address the threshold jurisdictional allegations of the Complaint – allegations that plainly misrepresent the parties' relationship for the sole purpose of creating federal jurisdiction where there is none.

Here, SEI alleges federal question jurisdiction under 28 U.S.C. § 1331 on the basis of its Lanham Act product disparagement claim. Central to that claim is the 'competitive' requirement of § 1125(a) – simply put, a plaintiff lacks standing to bring a § 1125(a) claim if the offending actions were not taken by a competitor. SEI's counsel in this action represents themselves to be experienced intellectual property litigators, and therefore it should come as no surprise that they would be acutely aware of the 'competitive'

_____

[2] Suits of this nature are often referred to as "SLAPPs," or "Strategic Lawsuits Against Public Participation." Most states have enacted some form of anti-SLAPP statute to provide early/efficient methods of disposing of such actions. Arizona's anti-SLAPP statute is somewhat narrow in that it only applies to those exercising "the right of petition" as part of an initiative, referendum or recall effort. As such, the expedited procedures provided for in Arizona's anti-SLAPP statute are not available here.

requirement of § 1125(a).

What is surprising, however, is SEI's threadbare allegation in the Complaint that Mr. Hammonds "is a competitor of SEI's."[3]  As demonstrated below, this allegation lacks any factual support and is made solely to create jurisdiction in this Court.  On this point, SEI and its counsel cannot argue that they simply failed to conduct the requisite 'reasonable inquiry' into their allegations and should somehow be excused (approximately four months transpired between the allegedly disparaging statement and the filing of the Complaint – certainly ample time to investigate whether Mr. Hammonds is a competitor of SEI).  Indeed, there is no dispute that both SEI and its counsel – prior to the filing of this lawsuit – recognized that Mr. Hammonds was a *customer* of SEI's, not a competitor. That SEI and its counsel now seek to reverse course for the sole purpose of creating federal jurisdiction is disingenuous at best and clearly deserving of sanctions for forcing Mr. Hammonds to respond to what can best be described as spurious allegations.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Background

#### A.    The Parties

As set forth in the Complaint, SEI "is in the business of manufacturing and selling" a wide variety of firearms, accessories, and firearms components.  Included amongst these components manufactured by SEI are firearms receivers, which can generally be described as the part of a firearm that houses the operating parts (such as the trigger and bolt).  From a legal perspective, the receiver is often the only portion of a firearm that is federally regulated, and as such is required to have a serial number.  Although other parts

---

[3]     See Complaint, ¶ 62.

are required to make a firearm operable, in the eyes of the law the receiver is the actual gun itself.  At issue in this case are receivers for a specific rifle type, the M14, which was a large caliber rifle previously adopted by the military.  See Complaint, ¶ 9.

Suffice it to say, firearms manufacturers and sellers are highly regulated by the federal government.  Indeed, the ATF publishes a listing of all federal firearms licensees (sellers, manufacturers, etc.), of which SEI is noted to hold a 'Type 7' license.[4]  See http://www.atf.gov/content/statistics-listing-federal-firearms-licensees.  In addition to regulatory requirements, there are also numerous practical issues involved in entering the firearms manufacturing business.  As with most technical businesses, a new manufacturer needs sufficient capital, machinery, tooling, design, material, and a designated location to build receivers such as those offered by SEI.  Assuming one could obtain a Type 7 license with ease, these practical requirements are often cost prohibitive and serve as a sufficient barrier to new entries into the market.

Mr. Hammonds is, as the Complaint states, an individual residing in Georgia.[5]  Mr. Hammonds is employed as an assistant professor of infectious diseases by the Department of Pediatrics at Emory University's School of Medicine.[6]  Although he is a firearms enthusiast and does discuss firearms and other issues on forums such as http://www.m14forum.com, Mr. Hammonds is not now (nor has he ever been) a firearms

---

[4]     There are 11 types of federal firearms licenses. Type 7 refers to manufacturers of firearms and ammunition.  To manufacture the M14 receivers at issue in this action, an entity must possess a Type 7 license.

[5]     See Declaration of Jason Edward Hammonds, dated September 17, 2013, a true and correct copy of which is attached hereto as Exhibit "A," at ¶ 2.

[6]     See http://www.pediatrics.emory.edu/information/employee/faculty1.cfm?pid=260&did=13

manufacturer.[7]  To be clear, Mr. Hammonds does not hold a Type 7 license (confirmable by the above atf.gov link), does not manufacture firearms (or receivers), and does not possess a machine shop or the requisite tools/knowledge to do so.[8]

What Mr. Hammonds does know how to do (and occasionally enjoys doing in his spare time) is purchasing various component pieces of firearms and assembling them into a complete firearm.  This generally requires no specialized knowledge and/or tools, and is frequently done on a daily basis by thousands (if not millions) of firearms hobbyists across the country.  While he may occasionally resell firearms that he has either assembled or purchased whole, he does not engage in the business of selling firearms, and certainly does not engage in the business of manufacturing and/or selling M14 receivers.

### B.    The Underlying Dispute

In January 2013, Mr. Hammonds placed an order for five M14 receivers from SEI's exclusive distributor, Crocs Gunshop.[9]  At the time of his order, Crocs Gunshop was requiring all purchasers to place a $375 deposit (approximately 50%) for each SEI receiver purchased (in Mr. Hammonds' case, he paid in full at time of purchase for all five receivers).  The invoice from Crocs indicates that Mr. Hammond's receivers were # 3, 4, 5, 6, and 7 out of a total of 50 receivers on order from SEI at that time, and that Crocs had been advised (presumably by SEI) that deliveries would begin in March/April 2013.[10]  As it turns out, this estimate was wishful thinking.

---

[7]    See Exhibit A, at ¶ 6.

[8]    Id. at ¶¶ 6 – 8.

[9]    Attached hereto as Exhibit "B" is a true and correct copy of the January 10, 2013 invoice from Crocs Gunshop.

[10]    See id.

By May 2013, Crocs had yet to deliver Mr. Hammonds' (and apparently many, if not all, others') M14 receivers. One such customer (not Mr. Hammonds) started a topic on the m14forum.com titled "Backordered SEI M14 Receiver From Croc's" (see Complaint, Exhibit A) in which he asked whether anyone had received their SEI M14 receiver orders from Crocs Gunshop. This commenced a discussion amongst several members of the forum regarding their not yet delivered receivers and the apparent lack of communication from SEI as to the delay.

Mr. Hammonds participated in the discussion and, like others, expressed his frustration regarding the situation. In July 2013, Mr. Hammonds posted the comment at issue in this litigation in the above-referenced forum topic, stating that he "heard from a reliable source that they are experiencing heat treatment issues" in their yet to be delivered receivers. At the time he made the statement, Mr. Hammonds' five receivers were still on order with Crocs Gunshop (for approximately eight months at that point).

**C.    SEI's Strong-Arm Tactics**

Following Mr. Hammonds' forum post, representatives of SEI engaged in a pattern of strong-arm tactics and threats in an effort to force Mr. Hammonds to retract his statement. This began with forum posts in the same topic by employees of SEI (ironically, it took Mr. Hammonds' post for SEI to respond to the topic, notwithstanding that SEI is a paid forum sponsor of m14forum.com) and eventually culminated with a threatening letter from SEI's counsel in this action. The common element between these actions was SEI's and its counsel's plain acknowledgment and understanding that Mr. Hammonds is a ***customer*** (albeit a justifiably frustrated one at that point in time), and not a competitor aiming to steer customers to Mr. Hammonds' own brand of receivers (of

which there are none).

For example, in one of Jackalope1911's (a SEI representative/employee) responses to Mr. Hammonds' post, he purports to relay a message from Ron Smith, SEI's principal:

> Ron Smith – "If you come on here saying you have a "reliable source", then I will have my lawyer contact this forum, find out who you are, and depose you to find out who your "reliable source" is, and start a lawsuit against them for slander. I have done it before, and I will do it again. I have been doing this for 40 years, no one else is making their receivers from barstock like we do, it takes time and skill of which not one of you would understand. We are too busy trying to get this stuff out to you and taking care of all the other stuff that we have always done to be putting up with this. Bottom line, I don't want your business if you are going to slander us like this, and that handful of you that have been constantly complaining (Rick Stern among others), we will tell Croc to go ahead and cancel your orders for you."[11]

True to his word, Ron Smith caused Crocs Gunshop to cancel Mr. Hammonds' order shortly after his threats were conveyed on m14forum.com.   Following a series of threatening and profanity-laced phone calls from Mr. Smith himself, Mr. Hammonds received an August 2, 2013 demand letter from Donna Catalfio, one of SEI's attorneys in this action.[12]  Notably, Ms. Catalfio does not accuse Mr. Hammonds of being a competitor of SEI's with some nefarious purpose behind his statement – rather, she plainly acknowledges (as her client did before her) that Mr. Hammonds is a customer:

> In your own case, SEI's distributor has already sent you a

---

[11]   See Backordered SEI M14 Receiver From Croc's, a true and correct copy of which is attached hereto as Exhibit "C."  The post from Jackalope1911 was made on July 28, 2013.  Exhibit C is a complete copy of the complete forum thread as of September 17, 2013 (Exhibit A to the Complaint provides only handpicked selections from the thread that has more than 130 replies to date).

[12]   A true and correct copy of the August 2, 2013 letter is attached hereto as Exhibit "D."

refund for the five receivers you had on order because SEI no longer wishes to do business with someone who makes false accusations against it.

In all of their pre-suit correspondence and telephone calls, neither SEI nor its counsel once referred to Mr. Hammonds as a competitor or even insinuated as much. It was perfectly clear to both SEI and its counsel that Mr. Hammonds was nothing more than a customer – not a 'competitor' as required to assert a § 1125(a) claim.

**D.** **The Complaint**

The Complaint asserts two causes of action against Mr. Hammonds: (1) product disparagement under § 1125(a)(1)(B) of the Lanham Act and (2) common law product disparagement under Arizona law. Given that SEI does not allege $75,000 in damages, jurisdiction in this case is based solely on 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction). In short, if SEI does not have standing to pursue a Lanham Act product disparagement claim against Mr. Hammonds, then the Court would not be vested with jurisdiction to hear this dispute (as the common law product disparagement claim could not be brought independently absent sufficient amount in controversy allegations).

SEI's counsel (sophisticated litigators experienced in Lanham Act matters) clearly recognized this issue in their framing of the pleadings. Curiously, the Complaint is devoid of any background regarding Mr. Hammonds' purchase of receivers from SEI or his status generally as a customer of SEI's (the forum post exhibits to the Complaint conveniently exclude Ron Smith's quote referring to cancelling Mr. Hammonds' order). What the Complaint does state, however, is that "[u]pon information and belief, Hammonds is a

competitor of SEI's."[13]  Neither SEI nor its counsel offers any basis or explanation for this striking conclusion.  Indeed, there is none.

## II.   Legal Standard

"Filing a complaint in federal court is no trifling undertaking.   An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact ...."  Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002).  "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (citing Advisory Committee Note on Rule 11).  "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'"  Id.

As the Notes of the Advisory Committee on Rules point out, the language of Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule.  The standard is one of reasonableness under the circumstances.... This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation."  Fed. R. Civ. P. 11, Notes of Advisory Committee; see also Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1508 (9th Cir. 1987) (counsel has affirmative duty of investigation into law and fact before filing).  Under Rule 11(b), an attorney has a "nondelegable responsibility"

---
[13]     See Complaint, ¶ 62.

to "personally ... validate the truth and legal reasonableness of the papers filed," Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989), and "to conduct a reasonable factual investigation," Christian, 286 F.3d at 1127.  To determine whether the inquiry actually conducted was adequate, the court applies a standard of "objective reasonableness under the circumstances."  Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159 (9th Cir. 1987).

**III.     SEI and its Counsel Should be Sanctioned**

SEI's federal product disparagement claim is brought pursuant to 15 U.S.C. § 1125(a)(1)(B).  That section provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, ***uses in commerce*** any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…

> (B) ***in commercial advertising or promotion***, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).  Whether a prudential standing requirement or simply an element of a § 1125(a)(1)(B) claim, courts are uniform in holding that a defendant must be 'in competition with' the plaintiff for such a claim to proceed.  See eMove Inc. v. SMD Software Inc., No. CV–10–02052, 2012 WL 1379063, at *5 (D. Ariz. Apr. 20, 2012) ("In order to be considered 'commercial advertising or promotion,' the misrepresentations must be: '(1) commercial speech; (2) ***by a defendant who is in***

***commercial competition with plaintiff***; (3) for the purpose of influencing consumers to buy defendant's goods or services.'") (quoting Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999); Boule v. Hutton, 328 F.3d 84, 90 (2d Cir. 2003) ("For a statement to constitute "commercial advertising or promotion," as that phrase is used in the Lanham Act, the "statement must be... for the purpose of influencing consumers to buy defendant's goods or services."); Neuros Co. v. KTurbo, Inc., 698 F.3d 514, 521–22 (7th Cir. 2012) (explaining that § 1125(a) applies to actions designed to persuade possible customers to buy the defendant's product); Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1273–74 (10th Cir. 2000) (holding that § 1125(a) applies if a statement was made "by a defendant who is in commercial competition with plaintiff" and "for the purpose of influencing consumers to buy defendant's goods or services").

That Lanham Act claims require an element of 'competition' between the parties is too fundamental a concept for SEI or its counsel to dispute.  Indeed, it is unlikely that either would dispute the requirement, as the statements in the Complaint regarding Mr. Hammonds' competition with SEI were certainly included for a reason.  Counsel for SEI knew full well what it was doing when, "upon information and belief," it referred to Mr. Hammonds as a competitor of SEI's in the Complaint.  For whatever reason, SEI's counsel made the tactical decision that filing this lawsuit in federal court would somehow intimidate Mr. Hammonds more than filing it in state court, and as such they did everything in their power to ensure that their jurisdictional allegations matched up with the legal requirements.

The  problem  with  this  strategy,  of  course,  is  that  Mr.  Hammonds  is  not  a

competitor of SEI's, nor is there any evidence to suggest otherwise.  SEI and its counsel cannot with a straight face suggest to the Court that they conducted a 'reasonable inquiry' into this allegation when they themselves knew for a fact (months before this lawsuit was filed) that Mr. Hammonds was a customer of SEI's.  As SEI's self-serving and boasting statements in the Complaint make clear, SEI is a company that knows its industry and knows who its competitors are.[14]

That Mr. Hammonds does not hold a firearms manufacturing license and is actually employed full-time as an assistant professor at Emory University is easily confirmable in a matter of seconds on the Internet.  To be clear, this is not a case where a party was innocently mistaken or somewhat sloppy in its allegations – both SEI and its counsel knew exactly what they were doing when they alleged Mr. Hammonds to be a competitor of SEI's and both deliberately misrepresented the basic facts of the parties' relationship to the Court.  In doing so, SEI and its counsel have accomplished exactly what they set out to do – force Mr. Hammonds to incur unnecessary litigation expenses in a faraway court in a calculated hope that he will succumb to the costs/pressure.  The Court should not tolerate such brazen and underhanded tactics.

Here, SEI and its counsel's assertions clearly run afoul of Federal Rule of Civil Procedure 11(b)(1), (2), and (3) in that they are advanced for an improper purpose (to harass and increase Mr. Hammonds' cost of litigation), they are not warranted by existing law (there can be no Lanham Act claim for allegedly disparaging remarks made by a consumer), and they are clearly devoid of evidentiary support.  As such, both SEI and its

---

[14]   See, e.g. Complaint, ¶ 13 (comparing SEI's manufacturing process to that of its competitors).

1    counsel should be sanctioned.

2          "If a Rule 11 violation is found, whether to impose sanctions is within the Court's

3    discretion." Telesaurus VPC, LLC v. Power, 888 F. Supp. 2d 963, 971 (D. Ariz. 2012)

4    (citing Charles Alan Wright et al., 5A Federal Practice and Procedure § 1336.1 (3d ed.)

5    ("The 1993 amendment to Rule 11 returned the imposition of sanctions to the discretion

6    of the district judge ...."). However, "[a]n attorney who signs the paper without such a

7    substantiated belief '*shall*' be penalized by 'an appropriate sanction.'" Hartmarx, 496

8    U.S. at 393 (emphasis added). The Court in Hartmarx succinctly explained why SEI and

9    its counsel must be sanctioned: "Baseless filing puts the machinery of justice in motion,

10   burdening courts and individuals alike with needless expense and delay." Id. at 398.

11   Moreover, a party is responsible for innocent, good faith mistakes of law or for

12   carelessness of counsel, because reasonably inquiry would reveal a mistake, and counsel

13   who is careless has not made reasonable inquiry. Lloyd v. Schlag, 884 F.2d 409, 412 (9th

14   Cir. 1989).

15         SEI and its counsel are in violation of three separate sections of Rule 11. Because

16   each violation subjects SEI and its counsel to sanctions, Mr. Hammonds requests that the

17   Court order SEI and its counsel sanctions in an amount sufficient to reimburse Mr.

18   Hammonds for all of his attorney fees and costs incurred in defending this action, along

19   with monetary sanctions in an amount to deter SEI and its counsel from again endeavoring

20   to invent jurisdiction on the basis of plain misrepresentations.[15]

---

[15]      As stated above, Mr. Hammonds will be moving to dismiss the Complaint on the basis that SEI fails to adequately allege standing/that Mr. Hammonds is a competitor of SEI. Mr. Hammonds will likewise move to dismiss the Complaint on additional grounds,

**IV.    Conclusion**

WHEREFORE, Mr. Hammonds respectfully requests that the Court enter an Order:

1.     Granting this motion for sanctions pursuant to Federal Rule of Civil Procedure 11(c) against SEI and its counsel;

2.     Awarding Mr. Hammonds his attorneys' fees incurred, and to be incurred, in this matter;

3.     Assessing additional monetary sanctions against SEI and its counsel for affirmatively misrepresenting jurisdictional allegations to the Court for the purpose of creating federal question jurisdiction; and

4.     Granting such other relief as is necessary and proper.

DATED this 1st day of November, 2013.

BECKER & POLIAKOFF, P.A.
Emerald Lake Corporate Park
3111 Stirling Road
Fort Lauderdale, FL  33312-6525
Telephone:  (954) 987-7550
Facsimile:  (954) 985-4176
DDeSouza@becker-poliakoff.com

By: _/s/ Daniel DeSouza_____

Daniel DeSouza, Esq.
Florida Bar No. 19291

***Attorneys    for    Defendant    Jason    E.
Hammonds***

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2013 I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF system for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

not the least of which is the lack of any good faith basis to assert personal jurisdiction over Mr. Hammonds in this Court.

1

2          Donna H. Catalfio, Esq.
           Andrea L. Stone, Esq.
3          Gallagher & Kennedy, P.A.
           2575 East Camelback Road
           Phoenix, Arizona 85016-9225
4          Attorneys for Plaintiff

5
           /s/Daniel DeSouza
6    7502529
     ACTIVE: 5014929_1
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28