WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Smith Enterprise Incorporated, | No. CV-13-01773-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Jason Edward Hammonds, | |
| Defendant. | |

Pending before the Court are Defendant Jason Hammonds' Motion to Dismiss (Doc. 16) and Motion for Sanctions (Doc. 24). For the following reasons, Defendant's Motion to Dismiss is granted and Defendant's Motion for Sanctions is denied

## BACKGROUND

This case arises from a statement made by Defendant on an internet message board. Plaintiff Smith Enterprise Incorporated ("SEI") is an Arizona corporation that manufactures firearms and related accessories. (Doc. 1 ¶ 2.) In addition to other products, SEI manufactures M14 receivers, the part of an M14 rifle that houses its operating parts. (*Id.* ¶ 9.) SEI manufactures its M14 receivers using a lengthy process that involves carving the receiver out of a solid block of steel. (*Id.* 13–16.) SEI does not sell its M14 receivers to end users, but instead uses a distributer, Crocs Gunshop, to manage consumer sales. (*Id.* ¶ 19.) Given the apparently high demand for the M14 receivers and the extended manufacturing process, Crocs Gunshop requires customers to put down a deposit to buy one of the receivers. (*Id.* ¶ 20.) Crocs Gunshop collects this deposit and holds it until the customer's receiver is shipped from SEI. SEI does not receive any part

of this deposit, and only receives payment from Crocs Gunshop once the receiver has shipped. (*Id.* ¶ 21.)

Defendant Jason Hammonds is a resident of Georgia and works as a medical school professor. (Doc. 16–1.) At some point prior to May 2013, Hammonds placed an order for five SEI M14 receivers from Crocs Gunshop. (Doc. 16–2 at 2.)  On or about May 29, 2013, a Crocs Gunshop customer posted a comment on an online message board known as the "M14 Forum" regarding his SEI M14 receiver order. (Doc. 1 ¶ 22.) The customer asked for information about when he might receive the receiver that he had ordered. (*Id.*) This comment began a thread in which a number of other customers discussed their orders and some expressed frustration at the length of time it was taking for them to receive the items. (*Id.* 23–25.) In the course of this message board thread, Hammonds posted the following:

> I heard from a reliable source that they are experiencing heat treatment issues in their receivers. Reports of receiver threads cracking upon barrel installation, stuff like that. I can't imagine it's been this long getting the tooling in order. Feeding us BS. At this point I believe you have every right to demand a full refund. Crocs has offered such to others that have been waiting. Feel free to use this info to your every advantage.

(Doc. 1-1 at 3.)

An SEI employee saw this post and replied: "Unless your source is one of us, then it's wrong. None of that is true." (*Id.* at 4.) Shortly after, Hammonds responded: "Good to know, I guess. Then where are the receivers????? Current explanation does not seem to add up." (*Id.*)

SEI President Ron Smith then called Hammonds and told him that the statement he made on the message board was false and that SEI would "not hesitate to file a lawsuit to protect its reputation and goodwill" if Hammonds did not retract his statement. (*Id.* ¶ 32.) SEI claims that Hammonds refused to retract his statement, but did return to the M14 Forum to post:

> I had what I have found to be a reliable source tell me some reasoning behind the delay in SEI M14 receiver deliveries. It was merely conjecture as the source was secondary in nature, but has proven over time to me to be quite accurate in hindsight. Pretty good source of info. Anyway, it seemed logical as we had seen no product. We had gotten nothing from SEI except excuses for 6 months. Poor Croc. I feel for him. Caught in the middle. Anyway, it was time to nudge them and force an explanation.

(Doc. 1-1 at 13.)

Hammonds further posted that:

> We don't know exactly. We are all guessing and listening to folks that we respect come up with likely reasoning. I was told they may have been experiencing heat treatment issues and that is the reason why we have not seen any product. The source of info was merely brainstorming reasoning behind such a delay in the current environment. Just the normal rumor mill when you don't get an honest answer.

(Doc. 1-1 at 8.)

In a letter dated August 2, 2013, SEI's counsel again informed Hammonds that his statement was false. (Doc. 1 at ¶ 48.) The letter stated that SEI would waive its damages if Hammonds would cease making false statements and post an apology and retraction on the M14 Forum. (*Id.*) When Hammonds refused to do so, stating his statements were merely opinion, SEI filed the present suit. (*Id.* at ¶ 49.) SEI alleges one count of product disparagement under the Lanham Act, 15 U.S.C. § 1125(e), and one count of product disparagement under Arizona common law. (*Id.* ¶¶ 52–76.) Hammonds now moves to dismiss the action on various grounds, including that Plaintiff has not established personal jurisdiction. (Doc. 16.) Further, Hammonds moves for sanctions against SEI and its counsel pursuant to Federal Rule of Civil Procedure 11. (Doc. 24.)

/ / /

/ / /

**ANALYSIS**

**I.   PERSONAL JURISDICTION**

   **A.   Legal Standard**

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)); *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a nonresident defendant." *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)); *Data Disc*, 557 F.2d at 1284 (citing *Taylor*, 383 F.2d at 639).

To establish a prima facie case of personal jurisdiction, the plaintiff has the burden of showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Due process requires a nonresident defendant to have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 5 (1985).

To establish general personal jurisdiction, "minimum contacts exist where a defendant has 'substantial' or 'continuous and systematic' contacts with the forum state, even if the case is unrelated to those contacts. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984))

Specific jurisdiction is analyzed under a three-pronged test:

> (1) [t]he non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011).

**B.     Application**

Here, Plaintiff does not allege that Hammonds had the kind of substantial or systematic and continuous contacts with Arizona to establish general personal jurisdiction. Hammonds is a Georgia resident who has never visited Arizona and who has no business with Arizona outside of this matter. (Doc. 16-1.) Plaintiff alleges that Hammonds has done business with SEI in Arizona, but does not seem to suggest that this business goes beyond ordering the SEI receivers from Crocs Gunshop at issue in this case. Thus, Plaintiff does not establish general personal jurisdiction.

To establish specific personal jurisdiction, Plaintiff must first demonstrate that Hammonds purposefully directed his activity at Arizona. Purposeful direction is evaluated using the Supreme Court's three-part *Calder* effects test. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted). Under this test, "the defendant allegedly must

1 have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing
2 harm that the defendant knows is likely to be suffered in the forum state." *Id.*

3   Under the first prong, it is clear that Hammonds intentionally posted on the M14
4 message board. However, under the second prong, it does not appear that Hammonds'
5 posts were expressly aimed at Arizona. The Ninth Circuit has explained that "express
6 aiming" occurs when the "defendant is alleged to have engaged in wrongful conduct
7 targeted at a plaintiff whom the defendant knows to be a resident of the forum state."
8 *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). It is
9 undisputed that Hammonds knew that SEI is an Arizona corporation, but the Ninth
10 Circuit has held that the knowledge of the citizenship of the Plaintiff "goes to the
11 foreseeable effect prong of the 'effects test' and is not an independent act that can be
12 interpreted as being expressly aimed at [the forum]." *Pebble Beach Co. v. Caddy*, 453
13 F.3d 1151, 1158 (9th Cir. 2006).

14   Here, Hammonds made a statement on the message board that SEI was
15 experiencing manufacturing problems. This comment was made to fellow customers as
16 part of a conversation in which customers expressed frustration to each other over the
17 delay in receiving the products they had ordered from SEI. Hammonds made a statement
18 suggesting a reason for this delay. After Hammonds was informed this statement was
19 false, Hammonds posted that his source had been "merely brainstorming" and that the
20 statement was "just the normal rumor mill." (Doc. 1-1 at 8.) At the time of his statements,
21 Hammonds had placed orders and deposits for SEI products and was waiting for those
22 products to arrive. Hammonds' comments themselves do not suggest, and SEI has not
23 sufficiently alleged, that Hammonds made his comments in order to harm SEI. Instead, it
24 appears that Hammonds was expressing his own frustration over the delay in receiving
25 his SEI products.

26   After SEI contacted Hammonds, he wrote a subsequent post admitting the initial
27 post was "merely conjecture" and also noting it was "time to nudge [SEI] and force an
28 explanation [for the delay]." (Doc. 1-1 at 13.) Here, Hammonds' statement seems aimed

1 at SEI, but is merely a statement admitting his initial statement was solely based on
2 conjecture. Assuming that this statement qualifies as one expressly aimed at SEI in
3 Arizona, it nonetheless fails under the third prong of the *Calder* test as SEI does not
4 allege it experienced any harm because of this statement qualifying Hammonds' earlier
5 statement. If anything, this later statement seems to help undo any possible harm caused
6 by that earlier statement. Plaintiff therefore fails to establish facts that suggest
7 Hammonds purposefully directed his actions at Arizona under *Calder*. Because Plaintiff
8 fails to establish this first prong of the specific personal jurisdiction inquiry, the Court
9 need not address the other two prongs, but nevertheless finds that, under the
10 circumstances as alleged by SEI, the exercise of Hammonds would not be reasonable,
11 and thus finds that SEI has not established personal jurisdiction in this case.

12 **II.    SANCTIONS**

13 Defendant moves for sanctions against SEI and its counsel, pursuant to Federal
14 Rule of Civil Procedure 11. (Doc. 24.) In relevant part, Rule 11 states that in presenting a
15 pleading or other paper to the court, an attorney certifies that "to the best of the person's
16 knowledge, information, and belief formed after an inquiry reasonable under the
17 circumstances" the case is not "being presented for any improper purpose," the claims
18 "are warranted by existing law or by a nonfrivolous argument for extending" the law, and
19 "the factual conditions have evidentiary support or, if specifically so identified" are likely
20 to have such support following discovery. Fed. R. Civ. P. 11(b)(1)–(3). Hammonds
21 argues that Plaintiff has used strong-arm tactics and has brought this suit in order to
22 intimidate him and that the suit is plainly frivolous because he is not a competitor of SEI.

23 While the Court finds that these arguments are not without merit, and even
24 viewing the facts alleged by Plaintiff in the light most favorable to it, this suit appears to
25 be an extremely disproportionate response to the actions of the Defendant, they do not
26 reach the level necessary to impose the "extraordinary remedy" of Rule 11 sanctions.
27 *Operating Engineers Pension Trust v. A-C CO.*, 859 F.2d 1336, 1345 (9th Cir. 1988)
28 (noting that sanctions are appropriate in the "rare and exceptional case where the action is

1 clearly frivolous, legally unreasonable or without legal foundation, or brought for an
2 improper purpose"). Here, it seems quite clear that Hammonds is not a competitor of SEI
3 because he does not manufacture M14 receivers, but it does appear that Hammonds has at
4 least occasionally sold M14 rifles that he has assembled from component parts, and thus
5 the claims based on the contention that he is a competitor of SEI are not plainly frivolous
6 for purposes of Rule 11. Therefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 16) is **granted**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions (Doc. 24) is **denied**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action and enter judgment accordingly.

Dated this 6th day of March, 2014.

_____
G. Murray Snow
United States District Judge